# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CEDRIC RICKS, | ) |
| Plaintiff, | ) |
| v. | ) No. 11 C 1237 |
| UNITED STATES ALLIANCE FIRE PROTECTION, INC., a Delaware corporation, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On December 12, 2011, Plaintiff Cedric Ricks filed the present two-count Second Amended Complaint against Defendant United States Alliance Fire Protection alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  Before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  For the following reasons, the Court grants Defendant's motion and dismisses this lawsuit in its entirety.

## BACKGROUND

### I.    Northern District of Illinois Local Rule 56.1

Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000).  "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time

combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008). Pursuant to the Local Rules, the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56.1(b)(3)(B) Response, but instead must rely on the nonmovant's Local Rule 56.1(b)(3)(C) Statement of Additional Facts when making factual determinations. *See id.* at 643; *Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809 (7th Cir. 2005).

The purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). Also, the Court may disregard statements and responses that do not properly cite to the record. *See Cady,* 467 F.3d at 1060; *Cichon,* 401 F.3d at 809-10.

Plaintiff did not file a Local Rule 56.1(b)(3)(C) Statement of Additional Facts. Instead, in his legal memorandum, he cites to the allegations in his Second Amended Complaint to support some of his facts. Allegations in a complaint, however, are not evidence, and courts may only consider admissible evidence when determining summary judgment motions. *See Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir.2009); *Nisenbaum v. Milwaukee County,* 333 F.3d 804, 810 (7th Cir. 2003). In addition, in his legal memorandum, Plaintiff cites directly to the evidence in the record instead of a Rule 56.1 Statement and some of Plaintiff's cites to his deposition do not give the correct page number. Not only must Plaintiff file a separate Rule 56.1 Statement along with his supporting legal memorandum, his legal memorandum must cite to the Rule 56.1 Statement and not directly to the evidence in the record. *See Malec v. Sanford*, 191 F.R.D. 581, 585-86 (N.D. Ill. 2000); *see also Raymond v. Ameritech,* Corp. 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1"). As the Seventh Circuit instructs, "[b]ecause of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filing." *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011). With these standards in mind, the Court turns to the relevant facts of the case.

## II.     Relevant Facts

United States Fire Protection, Inc. ("USFP") was a corporation that started in 1986 and provided fire protection systems and services in Illinois, Indiana, and Wisconsin with its headquarters in Lake Forest, Illinois. (R. 66, Def.'s Rule 56.1 Stmt. Facts ¶ 4.) The president of USFP was Chad Huennekens. (*Id.*) Alliance Fire Protection, Inc. ("Alliance") was a corporation

3

that started in 1995 and provided fire protection systems and services in Illinois, Indiana, and Wisconsin with its headquarters in Vernon Hills, Illinois. (*Id.* ¶ 5.) The President of Alliance was Fredric Kroll. (*Id*.) On or about April 16, 2011, USFP and Alliance merged to form United States Alliance Fire Protection, Inc. (*Id.* ¶ 8.)

Ricks was a member of UA Local 281 Sprinkler Fitters Union ("Union"), and his work was governed by a collective bargaining agreement ("CBA"). (*Id.* ¶ 17.) In 1997, Ricks started working in the fire sprinkler business at Controlled Systems as an apprentice, but that company quickly ran out of work for him, and thus the Union subsequently found work for him at USFP. (*Id*. ¶ 18.) Ricks worked at USFP for six years and was laid off in 2003. (*Id.*) Ricks does not know the reason for his layoff in 2003, but he does not believe that it was discriminatory or retaliatory. (*Id.* ¶ 19.)

In June 2006, Ricks resumed his employment with USFP. (*Id*. ¶ 22.) At some point after his returned to USFP, Ricks encountered problems with Dave Calantuno, a foreman who supervised him at certain job sites. (*Id*. ¶ 24.) Ricks recalls that at some point after he returned to USFP, Calantuno said that "black people don't want to work." (*Id*. ¶ 25.) According to Ricks, Calantuno used a harsh tone when speaking to him. (*Id*. ¶ 26.) Ricks also testified that Calantuno told him "it will be the end of the world if we get a black president." (*Id*. ¶ 28.) Further, Ricks testified that he complained to Huennekens and USFP's Vice President, Amos Miner, about moving to another job at the beginning of November 2007 because he could not work with Calantuno any more. (*Id*. ¶ 30.) Ricks, however, did not tell Huennekens or Miner that Calantuno's conduct or comments were racist. (*Id*.)

4

On November 13, 2007, Ricks was at the 14th and State Street job site when Calantuno pulled out a Sun-Times article and threw it at him, telling him to "wake up." (*Id.* ¶ 33.) The article was entitled "Black America" and discussed an interview with Michelle Obama during the presidential primary. (*Id.* ¶ 35.) Ricks thought the article was racist. (*Id.* ¶ 36.) After the November 13, 2007 incident with Calantuno, Ricks called Tim Reidy, the superintendent of the 14th and State Street job site, explaining that he did not appreciate Calantuno giving him the Sun-Times article. (*Id.* ¶ 41.) Thereafter, Reidy told Ricks he would take care of it and that he would send Ricks to another job. (*Id.* ¶¶ 43, 44.)

After Reidy assigned Ricks to other USFP job sites, Ricks received a call from a foreman on December 13, 2007 that he was being transferred to Alliance. (*Id.* ¶¶ 45, 46.) The foreman explained that he did not know why Ricks was being transferred, but that Reidy told him to make the call. (*Id.* ¶ 47.) Ricks does not know if Reidy had the authority to make the decision to transfer him or the nature of Reidy's motivation. (*Id.* ¶ 48.) Thereafter, Ricks called Reidy for more information. (*Id.* ¶ 52.) Reidy told him that he was doing Ricks a favor and that it would be a better opportunity for Ricks to work at Alliance. (*Id.*)

After Ricks was transferred to Alliance, he filed a charge of discrimination dated January 16, 2008 with the Illinois Department of Human Rights ("IDHR") alleging race discrimination based on his mid-December 2007 transfer to Alliance.[1] (R. 75-2, 1/16/08 IDHR Charge.) Meanwhile, while working at Alliance, Ricks earned the same pay and received and earned the

---

[1] Illinois has a dual filing system in which charges filed with the EEOC or IDHR are automatically cross-filed in the other agency. *Garcia v. Village of Mount Prospect,* 360 F.3d 630, 643 n.13 (7th Cir. 2004); *Harris v. Cook County Hosp.,* 971 F.Supp. 329, 331 n.2 (N.D. Ill. 1997)*; see also* 42 U.S.C. § 2000e-5(e)(1).

5

same benefits that he had at USFP. (*Id*. ¶ 58.) In addition, Ricks had the same title with the same job duties and responsibilities. (*Id*.) Also, he remained a member of the Union and his employment was governed by the CBA. (*Id*.) On February 25, 2008, Alliance laid off Ricks. (*Id*. ¶ 61.) On February 26, 2008, Ricks filed a second charge of discrimination with the IDHR alleging that his layoff was based on his race. (*Id*. ¶¶ 10, 67.) Ricks also brought a retaliation claim in his second IDHR charge based on his January 16, 2008 IDHR discrimination charge. (*Id*. ¶ 10, R. 75-4, 2/26/08 IDHR Charge.)

In Count I of Ricks' Second Amended Complaint, he alleges that Defendant violated Title VII when it: (a) transferred him to Alliance because of his race; and (b) terminated him on February 25, 2008 because of his race. (*Id*. ¶ 15.) In Count II, Ricks alleges that Defendant violated Title VII when it terminated him from his employment on about February 25, 2008 in retaliation for his filing a charge of discrimination on January 16, 2008. (*Id.* ¶ 16.)

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

6

323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "A plaintiff must begin to meet this burden by submitting admissible, supporting evidence in response to a proper motion for summary judgment." *Harney v. City of Chicago,* 702 F.3d 916, 925 (7th Cir. 2012); *see also Fleishman v. Continental Cas. Co.,* 698 F.3d 598, 603 (7th Cir. 2012) ("To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor.").

## ANALYSIS

### I. Title VII Race Discrimination Claim — Count I

In Count I of his Second Amended Complaint, Ricks alleges that Defendant discriminated against him based on his race in violation of Title VII. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To avoid summary judgment on his race discrimination claim, Ricks may use either the direct or indirect method of proof pursuant to the familiar burden-shifting *McDonnell Douglas* framework. *See Brown v. Advocate So. Suburban Hosp.,* 700 F.3d 1101, 1104 (7th Cir. 2012).

The initial focus of Defendant's summary judgment motion as to Count I of the Second Amended Complaint is that Ricks cannot establish that he suffered an adverse employment action in regard to his transfer to Alliance — which is a requirement under both the direct and

7

indirect methods of proof.  *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012); *Naficy v. Illinois Dep't of Human Serv.,* 697 F.3d 504, 509 (7th Cir. 2012) ("To avoid summary judgment using the 'direct method,' a plaintiff must marshal sufficient evidence, either direct or circumstantial, that an adverse employment action was motivated by discriminatory animus."). As the Seventh Circuit recently explained:

> [A]fter setting aside the "snarls and knots" occasioned by using the "direct" and "indirect" formulations, the question is simply whether the plaintiff has "one way or the other" presented sufficient evidence that she is protected by the statute, suffered an adverse employment action, and sufficient evidence exists that a rational jury might conclude the employer acted on account of the plaintiff's protected class as opposed to some other benign reason.

*Naficy*, 697 F.3d at 514 (citation omitted).  The Court thus turns to the parties' arguments regarding whether Ricks has presented sufficient evidence that he suffered an adverse employment action based on his mid-December 2007 transfer from USFP to Alliance.

"An adverse employment action must 'materially alter the terms and conditions of employment.'"  *Dass v. Chicago Bd. of Educ.,* 675 F.3d 1060, 1069 (7th Cir. 2012).  "This means that the action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Porter v. City of Chicago,* 700 F.3d 944, 954 (7th Cir. 2012) (citation omitted).  The Seventh Circuit has set forth three categories of materially adverse employment actions:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace

8

environment.

*Dass*, 675 F.3d at 1069 (citation omitted).

In support of its summary judgment motion, Defendant has presented undisputed evidence that while working at Alliance, Ricks earned the same pay and received and earned the same benefits that he had at USFP. Also, there is undisputed evidence in the record that Ricks had the same title with the same job duties and responsibilities, remained a member of the Union, and that his employment was governed by the CBA. Based on these facts, the transfer to Alliance did not materially alter the terms or conditions of Ricks' employment. *See Dass,* 675 F.3d at 1069.

Nevertheless, Ricks approaches his adverse employment action argument under the second category stated above asserting that his transfer from USFP to Alliance was an adverse employment action because the transfer materially affected his long-term employment prospects. Specifically, Ricks testified that before he was transferred to Alliance, he had small supervisory jobs during the 1997-2003 time period when he first worked for USFP. (Ex. L, Ricks Dep., at 29-30.) Based on this testimony, Ricks argues that these small supervisory jobs provided him with experience, "which could reasonably be seen as an opportunity to later work as a foreman/supervisor with the company." (R. 76, Resp. Brief, at 7.) Viewing the facts and all reasonable inferences in Ricks' favor "does not extend to drawing inferences that are supported by only speculation or conjecture." *Brown v. Advocate So. Suburban Hosp.,* 700 F.3d 1101, 1104 (7th Cir. 2012) (citation omitted). In other words, Ricks' speculation that he may have had the opportunity to be a supervisor at USFP in 2007 based on his small supervisory positions during the 1997-2003 time period does not defeat summary judgment. *See Lewis v. Mills,* 677

F.3d 324, 331 (7th Cir. 2012) ("conjecture alone cannot defeat a summary judgment motion.") (citation omitted). Because Ricks has not established a genuine dispute as to the material fact that he suffered an adverse employment action based on his mid-December 2007 transfer to Alliance, Ricks' first claim of race discrimination fails.

Next, the Court turns Ricks' second basis for his race discrimination claim, namely Alliance's termination of Ricks' employment on February 25, 2008. Assuming that Alliance was put on notice of Ricks' February 26, 2008 IDHR charge, Ricks has failed to present sufficient evidence upon which a rational jury might conclude that Alliance acted on account of Ricks' race instead of "some other benign reason." *See Naficy*, 697 F.3d at 514.

In his memorandum in opposition to Defendant's motion for summary judgment, Ricks argues that he can establish a racist motive due to Calantuno's comments that "black people don't want to work," "it will be the end of the world if we get a black president," and that Calantuno used a harsh tone towards Ricks. Ricks further argues that the November 2007 incident in which Calantuno threw a Sun-Times article about Michelle Obama and the presidential primary at him also establishes that his layoff and transfer were based on his race.

Although Calantuno's comments and conduct were derogatory and inappropriate, isolated comments are normally insufficient to establish that an employer was motivated by unlawful discrimination. *See Dass,* 675 F.3d at 1072; *Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007). Isolated or stray remarks can raise an inference of unlawful discrimination, however, if they are (1) made by the decision-maker, (2) around the time of the decision, and (3) in reference to the adverse employment action. *See Dass,* 675 F.3d at 1072. Here, there is no evidence in the record that Calantuno was a decision-maker, namely, that he

10

had the authority to terminate Ricks' employment or transfer him to Alliance. (Def.'s Stmt. Facts ¶ 40.)[2] There is further undisputed evidence in the record that Ricks did not know who was responsible at Alliance for making the decision to lay him off in February 2008. (*Id.* ¶ 64.) Meanwhile, Calantuno's comments do not reference Ricks' transfer or layoff, and therefore, do not support a reasonable inference of discrimination. *See Egonmwan v. Cook County Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010). Because Ricks has failed to set forth sufficient evidence showing that there is a genuine issue for trial, the Court grants Defendant's summary judgment motion as to Count I of the Second Amended Complaint.

## II. Title VII Retaliation Claim — Count II

In Count II of the Second Amended Complaint, Ricks alleges that his February 2008 layoff was retaliatory because he filed an IDHR charge on January 16, 2008 alleging race discrimination based on his transfer to Alliance. Title VII's anti-retaliation provision makes it "unlawful ... for any employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by [Title VII]" 42 U.S.C. § 2000e–3(a). A plaintiff may establish retaliation under either the direct or indirect method of proof. *See Northington v. H & M Int'l,* ___ F.3d ___, 2013 WL 1150215, at *2 (7th Cir. Mar. 21, 2013). Ricks attempts to establish his Title VII retaliation claim under the direct method of proof. "To establish retaliation under the direct method, a plaintiff must present evidence, direct or circumstantial, showing that: (1) he engaged in a statutorily protected activity; (2) he suffered

---

[2] Ricks' Local Rule 56.1(b)(3)(B) Response to Defendant's Statement ¶ 40 does not refute this statement and is non-responsive. *See Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 528 (7th Cir. 2000) (requirements for Rule 56.1 responses "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted.").

a materially adverse action; and (3) a causal connection exists between the two." *Harper v. C.R. England, Inc.,* 687 F.3d 297, 306 (7th Cir. 2012).

It is undisputed that filing an IDHR charge is a statutorily protected activity and that the termination of employment is a materially adverse action. *See Collins v. American Red Cross,* ___F.3d ___, 2013 WL 856512, at *2 (7th Cir. Mar. 8, 2013). The Court therefore turns to whether there is evidence in the record establishing a causal connection between the two. In support of the causal connection requirement, Ricks relies upon an Eastern District of Wisconsin case for the proposition that a reasonable juror could conclude that when an individual is terminated shortly after an incident, the two are related. *See EEOC v. C.G. Schmidt, Inc.*, 670 F.Supp.2d 848, 871 (E.D. Wis. 2009). Not only does Ricks misstate the court's ruling in *C.G. Schmidt,* the district judge also recognized controlling Seventh Circuit law that "standing on its own, a time period of a few months separating the protected activity and the adverse action is insufficient to establish a causal link for a claim of retaliation." *Id.* at 867 (citing *Mobley v. Allstate Ins. Co.,* 531 F.3d 539, 549 (7th Cir. 2008)). Indeed, the Seventh Circuit has repeatedly held that temporal proximity, alone, will rarely suffice to defeat summary judgment in the context of a Title VII retaliation claim. *See Kasten v. Saint-Gobain Performance Plastics Corp.,* 703 F.3d 966, 974 (7th Cir. 2012); *Povey v. City of Jeffersonville, Ind.,* 697 F.3d 619, 624 (7th Cir. 2012). Instead, courts consider not only suspicious timing, but also ambiguous statements, behavior or comments directed at employees in the protected group, and evidence that the employer's reason for the adverse action is pretext, among other factors from which an inference of retaliatory intent may be drawn. *See Jajeh v. County of Cook*, 678 F.3d 560, 570 (7th Cir. 2012).

Here, Ricks only offers evidence of the suspicious timing of his layoff which occurred approximately five weeks after he filed his IDHR charge. There is no evidence in the record that anyone at Alliance made ambiguous statements or directed comments or conduct toward other African-American employees or to Ricks himself upon which a reasonable juror could infer retaliatory intent. Indeed, in his deposition, Ricks admitted that the only reason he believes he was laid off in retaliation for filing a charge with the IDHR was that his termination occurred one month after he filed the charge. (Def.'s Stmt. Facts ¶ 69.) Without more than the suspicious timing of his layoff, Ricks has not presented sufficient evidence creating a factual dispute that Alliance laid him off due to his January 2008 IDHR charge. *See Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 677 (7th Cir. 2011) ("correlation is not the equivalent of causation."). The Court therefore grants Defendant's summary judgment motion on Count II of the Second Amended Complaint.

## CONCLUSION

For the these reasons, the Court grants Defendant's motion for summary judgment and dismisses this lawsuit in its entirety.

**Date:** April 5, 2013

ENTERED

*/s/ Amy J. St. E*

**AMY J. ST. EVE**
**United States District Court Judge**